VINCENT J. D'ELIA, ESQUIRE
309 Communipaw Avenue
Ground Floor
Jersey City, New Jersey 07304
Telephone: (201) 656-6503
Facsimile:  (201) 656-3274
NJ Attorney ID#284851972
Email: vjd@deliamccarthy.com
Attorney for Plaintiffs, Billy E. Singletary and Ida Singletary
*Rev, 10/18/2022*

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004¬2(c) | |
| In re:<br><br>   BILLY E. and IDA SINGLETARY,<br><br>   Debtors | Case No. 21-19637-JKS<br><br>Chapter 13<br><br>Honorable John K. Sherwood, U.S.B.J.<br><br>Adv. Proc. No. 22-01091-JKS |
| BILLY E. SINGLETARY and IDA SINGLETARY,<br><br>   Plaintiffs,<br><br>          v.<br>EQUITY SOURCE HOME LOANS, LLC; ANTHONY L. AFFATATI; CHASE HOME FINANCE, LLC; J.P. MORGAN CHASE, N.A.; MARY JO MCGOWAN; CRYSTAL MOORE; MARIA LEONOR GERHOLDT; WESTERN THRIFT & LOAN; JAY TRAIL; ACCREDITED HOME LENDERS INC.; LENDERS FIRST CHOICE; CECILIA GUIZAR-RODRIGUEZ; THE CIT GROUP/CONSUMER FINANCE, INC.; BANK OF NEW YORK MELLON; FRANK LENARTOWICZ; FLORENCE WATSON; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; MERSCORP HOLDINGS, INC., CIT MORTGAGE LOAN TRUST 2007-1; ROY LACEY; DANIELLE EWALD; JENNIFER SCOTT; DAVID NILSEN; FIRST AMERICAN TITLE CO.; PRESTIGE TITLE AGENCY, INC.; UNITED GENERAL TITLE INSURANCE COMPANY; CALIBER HOME LOANS, INC; AMERICAN SECURITY INSURANCE COMPANY; AURORA COMMERCIAL CORP; JOHN DOES 1-100; and ABC COMPANY 1-100,<br>          Defendants. | **MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS COMPLAINT BY DEFENDANTS (a) THE BANK OF NEW YORK MELLON; (b) CIT MORTGAGE LOAN TRUST, 2007-1 ASSET-BACKED CERTIFICATES, SERIES 2007-1 S/H/A CIT MORTGAGE LOAN TRUST 2007; and (c) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and (c) MERSCORP HOLDINGS, INC.'S; and (e) JPMORGAN CHASE BANK, N.A. and (f) FIRST AMERICAN TITLE COMPANY (s/h/a FIRST AMERICAN TITLE CO and UNITED GENERAL TITLE INSURANCE COMPANY) and** |

|  | **(g) CALIBER HOME LOANS, INC.; and (h) THE CIT GROUP/CONSUMER FINANCE, INC.;** |
|  | **-AND-** |
|  | **IN SUPPORT OF CROSS-MOTION UNDER RULE 15(a) SEEKING LEAVE TO FILE FIRST AMENDED VERIFIED COMPLAINT AND FOR DISCOVERY** |
|  | **October 18, 2022** |

**TABLE OF CONTENTS**

## Contents

TABLE OF CONTENTS ................................................................................................ I

TABLE OF AUTHORITIES .......................................................................................... III

INTRODUCTION ......................................................................................................... 1

POINT I ...................................................................................................................... 3

UNDER THE APPLICABLE STANDARDS OF PLEADING, PLAINTIFFS' CLAIMS
ARE PLAUSIBLE, AND ACCORDINGLY DEFENDANTS' MOTIONS SHOULD BE
DENIED; HOWEVER, IN THE INTEREST OF JUSTICE THE SINGLETARY'S
SHOULD BE GRANTED LEAVE TO FILE THE FIRST AMENDED COMPLAINT
SUBMITTED HEREWITH, MORE FULLY STATING THEIR CLAIMS ...................... 3

POINT II ..................................................................................................................... 4

DEFENDANTS' RELIANCE ON THE ROOKER-FELDMAN DOCTRINE IS
MISPLACED; ROOKER - FELDMAN IS INAPPLICABLE TO THE WITHIN
MATTER ..................................................................................................................... 4

POINT III ................................................................................................................... 7

IN RE MADERA IS DISTINGUISHABLE ................................................................... 7

POINT IV .................................................................................................................... 8

THE CURRENT COMPLAINT SHOULD BE FOUND ADEQUATELY PLEAD ......... 8

POINT V ................................................................................................................... 11

RES JUDICATA NEED NOT BE APPLIED TO BAR THE SINGLETARY'S'
CLAIMS, AND SHOULD NOT BE APPLIED IN THE INTEREST OF JUSTICE ....... 11

POINT VI .................................................................................................................. 12

THE APPLICABLE STATUTES OF LIMITATIONS SHOULD BE TOLLED BASED
UPON THE DISCOVERY RULE & FRAUDULENT CONCEALMENT BY
DEFENDANTS .......................................................................................................... 12

POINT VII .................................................................................................................. 13

DEFENDANTS CONDUCT ALSO CONSTITUTES A BREACH OF THE
CONTRACTUAL IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
ATTENDANT TO ALL CONTRACTS ......................................................................... 13

POINT VIII ................................................................................................................. 14

THE SINGLETARY'S DID NOT RATIFY THE $300,000 MORTGAGE, AS THEY
ASSUMED THE INCREASES IN MONTHLY PAYMENTS WERE DUE TO THE
ADJUSTABLE RATE PROVISION IN THE LOAN ..................................................... 14

POINT IX ................................................................................................................... 15

THE UNEXPLAINED BREAK IN THE CHAIN OF TITLE COUPLED WITH THE
ABSENCE OF THE ORIGINAL NOTE, TOGETHER WITH THE ASSIGNMENT
MORE THAN A YEAR AFTER THE ALLEGED TRANSACTION, COUPLED
FURTHER WITH THE SINGLETARYS' SWORN STATEMENT, MANDATE A
FINDING THAT THE TRANSACTION WAS NOTHING BUT A SHAM, AND THUS
FRAUDULENT ........................................................................................................... 15

POINT X .................................................................................................................... 17

THE SINGLETARYS SHOULD BE ENTITLED TO CONDUCT DISCOVERY ........ 17

# TABLE OF AUTHORITIES

Cases

Alfieri v. Willys  Motors Inc., 35 F.R.D. 194, 95 (E.D. PA. 1964) ..................................... 9

Antoine v. KPMG Corp.,  2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010) ......................... 9

Arcell v. Ashland Chemical Co., Inc., 152 NJ Super 471 (Law Div 1977) ..................... 18

Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949-50 (2009) ...................... 3

Beckwith v. Bethlehem Steel Corp., 182 NJ Super 376 (Law Div 1981)......................... 18

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007)................. 3

Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).............................. 4

Coat Factory Sec. Litig., 114 F3rd 1410, 1434 (3rd Cir. 1997) ..................................... 4, 9

D.D. v. Idant Lab'ys, 374 F. App'x 319, 323 (3d Cir. 2010) ............................................ 13

Deutsche Bank Nat'l Trust Co. V. Mitchell, 422 N.J. Super. 214(App. Div. 2011) ........ 16

District of Columbia Court of Appeals v. Feldman ................................................... 4, 6, 7

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 US 280 (2005) ..................... 5, 6

Forman v. Davis, 371 US 178, 182 (1962)....................................................................... 8, 9

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ........................................ 3

GASH Assoc. v Village of Rosemont, 995 F2d 726, 728 (7th Cir.1993).......................... 5

Gotlib v. Gotlib, 399 N.J. Super. 295, 312-313 (App. Div. 2008) ................................... 15

Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) ......... 9

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)............. 4, 9

In re Estate of Dawson, 136 N.J. 1, 20–21, 641 A.2d 1026 (1994) ................................. 11

In Re Madera, 586 F3d 228 (3rd Cir. 2009)...................................................................... 7

In re Serignese, No. 19-10724 (JLG), 2019 WL 2366424, at *2–3 (Bankr. S.D.N.Y. June 3, 2019) ......................................................................................................................... 17

Kernan v. One Washington Park Urban Renewal Associates, 154 NJ 437, 456-57 (1998) ....................................................................................................................................... 10

Lance v Dennis, 546 US 459 (2006) .................................................................................. 5

Lefebvre v. Somersworth Shoe Co., *supra*, 41 A.2d at 925............................................. 19

McCarter v. Farmer's Loan and Trust Co., supra, 105 NJ Eq. at 325 .............................. 19

McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009)............................................ 4

Meadows v. Hudson County Bd. of Elections, 2006 WL 2482956, at *3 (D.N.J. Aug 24, 2006)............................................................................................................................... 9

Mortgage Corp. v. Chaudhri, 400 N.J. Super. 126, 137 (App. Div. 2008) ...................... 16

New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409-410 ......... 15

Noel v Hall, 341 F3d 1148, 1163-64 (9th Cir. 2003) ......................................................... 5

Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521, 897 A.2d 1003, 1009 (2006) ............ 11

Pace v. Kuchinsky, 347 N.J.Super. 202, 215, 789 A.2d 162 (App.Div.2002).................. 12

Philadelphia Entertainment & Development Partners, LP v Commonwealth of PA Department of Revenue ............................................................................................... 6

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) ................................. 3, 4

Pottetti v. Clifford, 146 Conn. 252, 150 A.2d 207 (Sup. Ct. Err. 1959............................ 19

Rooker v. Fidelity Trust Co., 263 US 413 (1923) ........................................................ 4, 6, 7
Slowinski v. Valley Nat. Bank, 264 N.J. Super. 172, 182–85, 624 A.2d 85, 90–91 (App.
    Div. 1993) ................................................................................................................... 12
Stephens v. Clash, 796 F.3d 281, 284–85 (3d Cir. 2015) ........................................... 12, 15
Stripling v. Jordan Prod. Co., 234 F3rd 863, 872 (5th Cir. 2000) ...................................... 8
Tomaszewsky v McKeon Ford, Inc.,  240 NJ Super 404, 411 (App Div 1990) .............. 10
Walker v. Pennsylvania Railroad Co., supra, 134 N.J. Eq. at 550 ................................... 19
Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592 (App. Div. 2011). ....................... 15

Statutes

The New Jersey Fair Foreclosure Act (FFA), N.J.S.A. 2A:50-53 ................................... 16

Rules

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 3
Rule 12(b)(6) ........................................................................................................... 3, 4, 9

## INTRODUCTION

Plaintiffs, BILLY E. SINGLETARY and IDA MAE SINGLETARY hereby submit

this opposition Memorandum of Law, together with a separate supporting Declaration, in

opposition to the Motions to Dismiss their Adversary Complaint submitted by various

Defendants, pursuant to Rule 15. In that declaration they describe the following scenario.

Billy E. Singletary is 76 years old and Ida Mae Singletary is 72 years old. Due to

illness, Ida stopped working in 2002. She receives Social Security benefits each month.

Billy has worked for the same business or 41 years.  They purchased their house at 169 Van

Horne Street, Jersey City, New Jersey and 1984.  They have four children who live with

their families in North Carolina. They were all raised in the home.

They were looking to purchase a house in Virginia so they could move there in

approximately 2014 or 2015. A real estate agent asked if they had a mortgage on their

house, to which they responded that they had a mortgage on the house for $180,000, on

which they had been making payments since 2005.

Thereafter, a title search disclosed that, unbeknownst to Billy and Ida, mortgages had

been recorded against the property, first for $238, 000 in March 2, 2006, and six months

later for $300,000, which was apparently used to pay off the $238,000 mortgage – leaving a

credit to Billy and Ida of $90,000.

When Billy learned from the Registers Office that these liens were on their home Billy and

Ida contacted the lenders and servicing agents to resolve these issues. The Bank of New

York Mellon states in their papers that the Singletary's defaulted on June 1, 2015.

The Singletarys certify that they paid regularly all throughout the 20 years by withdrawals from their accounts at Chase, at Journal Square, the bank with which they had their arrangements.

Summary Judgment was granted to Mellon on August 19, 2016. Judgment of Foreclosure was entered on April 4, 2018.

Plaintiffs Billy and Ida claim that the $300,000 and $238,000 mortgages were sham, transactions, evidenced in part by an unexplained break in the chain of title of the mortgages (EXHIBIT F to Plaintiffs' Declaration), together with a completely out of the ordinary assignment of mortgage by New Century Mortgage Corporation, during the period when it was suffering financial problems, including ultimate bankruptcy, during which multiple officers were convicted of committing fraudulent transactions – apparently not disclosed to anyone in the foreclosure of the mortgage heard by Judge Barry Sarkisian – and not disclosed by any of the Defendants in this proceeding.

See articles. https://en.wikipedia.org/wiki/New_Century_Financial;

https://publicintegrity.org/inequality-poverty-opportunity/no-3-of-the-subprime-25-new-century-financial-corp/;https://carringtoncap.com/, [last visited 10/16/2022], as well as additional articles discussed hereinafter.

## POINT I

## UNDER THE APPLICABLE STANDARDS OF PLEADING, PLAINTIFFS CLAIMS ARE PLAUSIBLE, AND ACCORDINGLY DEFENDANTS' MOTIONS SHOULD BE DENIED; HOWEVER, IN THE INTEREST OF JUSTICE THE SINGLETARYS SHOULD BE GRANTED LEAVE TO FILE A FIRST AMENDED COMPLAINT, MORE FULLY STATING THEIR CLAIMS

Under Fed. R. Civ. P. 12(b)(6), made applicable to the bankruptcy courts by Fed. R. Bankr. P. 7012, a court must accept all well-pleaded allegations in the complaint as true, view them in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

The Supreme Court has set forth a two-step analysis for adjudicating a dismissal under Rule 12(b)(6). Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949-50 (2009). First, a court should identify and reject labels, conclusory allegations, and formulaic recitation of the elements of a cause of action. Second, a court must draw on its judicial experience and common sense to determine whether the factual content of a complaint plausibly gives rise to an entitlement to relief. This does not impose a "probability requirement" at the pleading stage but requires only a showing of "enough facts to raise a

reasonable expectation that discovery will reveal evidence of the necessary element."

Phillips, 515 F.3d at 233-34 (quoting Twombly, 127 S. Ct. at 1965).

The Court should accept all well-pleaded allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

In considering dismissal under Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). A court may also take judicial notice of a prior judicial opinion. McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009).

For the reasons given herein, this Court should deny Defendants' motions, and should also permit the Singletarys to file a first amended complaint.

## POINT II

### DEFENDANTS' RELIANCE ON THE ROOKER-FELDMAN DOCTRINE IS MISPLACED; ROOKER - FELDMAN IS INAPPLICABLE TO THE WITHIN MATTER

The Rooker — Feldman doctrine is a doctrine of civil procedure enunciated by the United States Supreme Court in two cases: Rooker v. Fidelity Trust Co., 263 US 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 US 462 (1983). The doctrine holds that lower United States Federal Courts should not sit in direct review of State Court decisions unless specifically authorized by Congress. Federal courts, below the Supreme Court must not become a Court of Appeals for state court decisions. The State Court

Appellant has to find a state court remedy or obtain relief from the United States Supreme Court. <u>Feldman</u>, at 476.

However, application of the doctrine is subject to limitations. For example, in <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 US 280 (2005), the Supreme Court affirmed that the doctrine is statutory, and not constitutional, and that it applies only in cases "brought by State — Court losers complaining of injuries caused by State — Court judgments rendered before the District Court proceedings commenced and inviting District Court review and rejection of those judgments". id. at 284. (emphasis added)

The Court stated, that "[i]f a Federal Plaintiff ' presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which the defendant was a party ... then there is jurisdiction and state law determines whether the defendant prevails". id. at 284, quoting <u>GASH Assoc. v Village of Rosemont</u>, 995 F2d 726, 728 (7th Cir.1993); accord <u>Noel v Hall</u>, 341 F3d 1148, 1163-64 (9th Cir. 2003).

An important factor in <u>Exxon Mobil</u> is that the plaintiff was not seeking to overturn the state court decision.

In <u>Exxon Mobil</u>, the Court highlighted the "narrow ground" on which the doctrine stands, id. at 292, and the Supreme Court has continued to narrow the doctrine further. See, for example, <u>Lance v Dennis</u>, 546 US 459 (2006), in which the Court emphasized that the doctrine applies only in "limited circumstances", <u>Exxon Mobil</u>  ... at 291, where a party, in effect, seeks to take an appeal of an unfavorable state court decision to a lower federal court". (emphasis added)

More recently, the Third Circuit Court of Appeals has limited the applicability of the doctrine. In <u>Philadelphia Entertainment & Development Partners, LP v Commonwealth of PA Department of Revenue</u>, 879 F3d 492 (31d Cir. 2018), the Court held that the doctrine applies only when the following four (4) requirements are met:

1.      The federal plaintiff lost in state court

2.      The plaintiff complains of injuries caused by the state court judgment

3.      The judgment issued before the federal suit was filed

4.      The plaintiff invites the District Court to review and reject the state court judgment.

In that case, the Third Circuit found that the fourth requirement was not met. Relying on <u>Exxon Mobil</u>, above, the Third Circuit ruled that, so long as federal court litigation does not concern the "bona fides of the prior judgment", the federal court "is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment". *Id*. at 500

The above is consistent with the 11th Circuit's recent conclusion about the doctrine:

> In short, [Federal] Courts should keep one thing in mind when Rooker–Feldman is raised: <u>it will almost never apply</u>.  <u>Behr v Campbell</u>, 8 F4th 1206, 1212 (11th Cir. 2021) (emphasis added).

The facts herein, then, do not trigger the doctrine because the State Court action was a foreclosure action, against Plaintiffs, whereas their pleading herein includes discreet issues relating to identity theft, fraud, negligence, and the like.  <u>Nasser v JP Morgan Chase Bank, NA, et al</u>, No. 17-40254 (NHL) (EDNY Oct. 8th 2020), at page 5; see, also, <u>Exxon Mobil</u>, above at 284.

Therefore, the complaint cannot be dismissed, under the doctrine, because Plaintiffs are not complaining of injuries caused by the judgment below.  Rather, the gravamen of their complaint relates to allegations of identity theft, fraud, and other such issues.  Those alleged injuries were not caused by the judgment below.  <u>Nasser</u>, above at page 8; see, also, <u>Graham v Select Portfolio Servicing, Inc.</u>, 156 FSupp 3rd 491, 508 (SDNY 2016).

**POINT III**

**<u>IN RE MADERA</u> IS DISTINGUISHABLE**

In <u>In Re Madera</u>, 586 F3d 228 (3rd Cir. 2009), plaintiffs obtained a mortgage loan and defaulted. The legal issues they raised in Pennsylvania Court were unpersuasive and the Court entered judgment against them. They sought bankruptcy-court protection from that judgment and the bankruptcy court applied the Rooker — Feldman doctrine and determined that it lacked jurisdiction. The Third Circuit Court of Appeals agreed with the lower court and affirmed the judgment.

<u>Madera</u>, however is distinguishable herein on several grounds:

1.      In <u>Madera</u> there is not even the suggestion of fraudulent activity behind the underlying transaction where, in the case at bar, such fraud (ie: identity theft) or even sham loans are at the core of the matter.

2.      Based on the above, then, plaintiffs herein most certainly did "create a question of fact that would allow a reasonable jury to find in their favor".   <u>Madera</u>, above.

3.      Granting the relief sought herein by plaintiffs would not prevent the state court "from enforcing its order".   <u>Madera</u>, <u>supra</u>. All it would do is clarify that part of the order that is — and should be — validly enforced (ie: that part of the order not based on the

fraudulent activity — again, the identity theft). This is because plaintiff always has acknowledged — and continues to acknowledge — that a portion of the underlying order, arising out of the one transaction that plaintiff **did** engage in and benefit from, is due and owing.

## POINT IV

## THE PRIOR AMENDED COMPLAINT SHOULD BE FOUND ADEQUATELY PLEAD

The complaint herein was filed, pro se, by two plaintiffs Billy and Ida Singletary with no legal training or experience of any kind. (Their efforts have been remarkable given their circumstances.) Further, we respectfully disagree with defendants as to some of their arguments on this issue. However, we note that Plaintiffs and I are nearly done with a careful and, I believe, a complete review of their somewhat voluminous files, relevant hereto, and I am confident that, within a reasonably short period of time, the complaint can be amended to conform to the applicable pleading requirements.

Rule 15(A)(2) states that a request to amend a pleading should be freely allowed "when justice so requires". Federal courts have held that the policy of the rule is liberal in favor of permitting such an amendment and that, unless there is a substantial reason to deny leave to amend, the request should be granted. Stripling v. Jordan Prod. Co., 234 F3rd 863, 872 (5th Cir. 2000); see, also, Forman v. Davis, 371 US 178, 182 (1962).  In Forman, the Supreme Court held that, absent any of a basic set of factors for denying a request to amend, the request should be granted. Those factors include:

A.    Undue Delay

B.    Bad faith or dilatory motive by the moving party

C.    Repeated failure to cure deficiencies by previous amendments

D.    Undue prejudice to the opposing party

E.    Futility

_Forman_, above at 182.

None of the factors set forth in <u>Forman</u>, by the Supreme Court, is present here.

However, given defendants' arguments in their motions, we briefly address the last of the above-listed factors, i.e.: futility.

An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." <u>Harrison Beverage Co. v. Dribeck Imps., Inc.,</u> 133 F.R.D. 463, 468 (D.N.J. 1990).  In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F3rd 1410, 1434 (3rd Cir. 1997). Under a Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary to survive such a motion. <u>Antoine v. KPMG Corp.,</u> 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. <u>Meadows v. Hudson County Bd. of Elections</u>, 2006 WL 2482956, at *3 (D.N.J. Aug 24, 2006). "Generally, a Court is not concerned with the question of whether the amended complaint would be barred by the Statute of Limitations unless this fact appears clearly from the record". <u>Alfieri v. Willys Motors Inc.</u>, 35 F.R.D. 194, 95 (E.D. PA. 1964).

Note that the above is wholly consistent with New Jersey's rule on amended pleadings. New Jersey's Supreme Court has held that, under R. 4:9-1, motions for leave to amend should "be granted liberally". <u>Kernan v. One Washington Park Urban Renewal Associates</u>, 154 NJ 437, 456-57 (1998). Further, the Court ruled that, although a court must be concerned that "no undue delay or prejudice will result from the amendment", it must weigh such factors against "the overriding need to seek justice". <u>Kernan</u>, above at 457; see, also, <u>Tomaszewsky v McKeon Ford, Inc.</u>,  240 NJ Super 404, 411 (App Div 1990).

In light of the above, then, Plaintiffs argue that there is no legitimate basis for denying their request to amend the complaint to plead more specifically. We agree that the adversary complaint is, at least in part, less than artfully constructed, failed to specify certain particular facts and specific defendants intended to have been set forth.  This effort by pro se litigators was intended to include many facts that have come to light, which were not disclosed by defendants; and we believe – and Plaintiffs assert - that Bank of New York Mellon should have been more candid and reasonable in its disclosure of facts known to it. (e.g.: Why, when the opportunity was available, did defendants fail to produce the original notes where the money was deposited of the balance of the loan?; also, why have none of the defendants informed the Court where the original notes and mortgages are for the two questionable loans?; further, why is it that the presentation by Defendants does not divulge what the total amount is that the Singletary's have paid since 2006 to NY Mellon and others; the file shows that the default date was June 1, 2015.  The motion for Singletary's Judge was argued on July 15, 2016 and the written decision and order was August 19, 2016.)

The foreclosure judgement is April 4, 2018. By that date, these defendants knew that Plaintiffs had gone for years to the Jersey City Police, the Hudson County Prosecutors Office, the Newark office of the FBI, and at even four locations during the period when Bank of NY Mellon were pushing to remove the Singletarys from their house where they raised their three children and lived for over forty years.

Why, when the opportunity was available, did defendants fail to produce the original notes where the money was deposited of the balance of the loan.

## POINT V

### RES JUDICATA NEED NOT BE APPLIED TO BAR THE SINGLETARYS' CLAIMS, AND SHOULD NOT BE APPLIED IN THE INTEREST OF JUSTICE

Contrary to Defendants' argument, the doctrines of <u>res judicata</u>, and more particularly collateral estoppel need not and should not be applied when, as here, it would be unfair to do so. See <u>Olivieri v. Y.M.F. Carpet, Inc.</u>, 186 N.J. 511, 521, 897 A.2d 1003, 1009 (2006), where the Court held:

> It is well settled that
>
> [f]or the doctrine of collateral estoppel to apply to foreclose the relitigation of an issue, the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [<u>In re Estate of Dawson</u>, 136 N.J. 1, 20–21, 641 A.2d 1026 (1994) (citations and parentheses omitted).]
>
> It is equally clear that "[e]ven where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is

unfair to do so." Pace v. Kuchinsky, 347 N.J.Super. 202, 215, 789 A.2d
162 (App.Div.2002).186 N.J. 511, 521, 897 A.2d 1003, 1009 (2006)

Clearly, justice and equity weigh in favor of the formerly pro se parties, who have

never had any legal training, and are simply attempting oppose the injustice that would

befall them if they are unable to be heard on their claims and the apparent fraud that they

have discovered relating to the bankruptcy — which reveals the likelihood of sham

mortgage transactions by Century Mortgage Corporation, in 2007, just discovered by the

Singletarys as described in their proposed Amended Complaint for which they now seek

leave to file.

In addition, see Slowinski v. Valley Nat. Bank, 264 N.J. Super. 172, 182–85, 624

A.2d 85, 90–91 (App. Div. 1993), where the Court, citing and applying Oliveira, held that it

would be unfair to give preclusive effect to a judgment entered on default, given the

inability of the party to have been fully heard on the merits, such as here.

## POINT VI

### THE APPLICABLE STATUTES OF LIMITATIONS SHOULD BE TOLLED BASED UPON THE DISCOVERY RULE & FRAUDULENT CONCEALMENT BY DEFENDANTS

"[T]he discovery rule tolls the limitations period until the plaintiff learns of his cause

of action or with reasonable diligence could have done so" and "is an exception to the usual

principle that the statute of limitations begins to run immediately upon accrual regardless of

whether or not the injured party has any idea what has happened to him." Stephens v. Clash,

796 F.3d 281, 284–85 (3d Cir. 2015).  Here, as Plaintiffs aver, Plaintiffs spent years

investigating and attempting to determine the bases for the $289,000 and $300,000 loans

that they did not receive

The Singletarys' situation was exacerbated by Defendants' fraudulent concealment of the truth. While the Singletarys should not be required to establish that such concealment was fraudulent, here the facts described by the Signatory's was clearly that.  See <u>D.D. v. Idant Lab'ys</u>, 374 F. App'x 319, 323 (3d Cir. 2010), discussing fraudulent concealment.

## POINT VII

### DEFENDANTS CONDUCT ALSO CONSTITUTES A BREACH OF THE CONTRACTUAL IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ATTENDANT TO ALL CONTRACTS

To establish a claim for breach of good faith and fair dealing, under a contract, "(1) Defendant must owe Plaintiff a duty to act in good faith and conduct fair dealing; (2) Defendant must breach that duty; and (3) the breach of duty must proximately cause Plaintiff's damages".  <u>Harte v Ocwen Fin. Corp</u>, No. 13-CV-5410 (MKB), 2014 WL 4677120 at *9 (EDNY Sept. 19, 2014).

The above is consistent with New Jersey law, although the New Jersey Supreme Court has gone farther in holding that every contract contains an implied covenant of good faith and fair dealing.

> In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists and implied covenant of good faith and fair dealing.

<u>Sons of Thunder, Inc. v Borden, Inc.</u>, 148 NJ 396 ,420 (1997).

See, also, the Uniform Commercial Code as adopted by, and incorporated into, New Jersey law by NJSA 12A:1-203:

> Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement.

In the U.C.C., in New Jersey, good faith is defined as "honesty in fact in the conduct or transaction concerned".  NJSA 12A:1-201 (19).

New Jersey Courts have found that, even in non-U.C.C. cases, this duty applies, grounding that holding in common law and in equity.  Sons of Thunder, above at 420-21.

Even when a party complies with the express terms of a contract, he still may be in breach of the covenant of good faith and fair dealing if he fails to act in good faith and deal fairly.  Sons of Thunder, above at 419, 421-24; see, also, NJ Civil Jury Charge 4.10 (J).

In portioning out this duty among the parties to a contract, the Supreme Court has recognized the imbalance of power between an experienced and legally-sophisticated financial institution, on the one hand, and a comparatively inexperienced and legally-unsophisticated consumer on the other.  When faced with such a disproportionate relationship, the Court has held that the financial institution, as the dominant party, has an even greater obligation than the consumer to act in good faith, and the institution must not act in any way that would undermine the consumer's reasonable expectations under the contract.  Price v NJ Manufacturers Insurance Company, 182 NJ 519, 526 (2005).

## POINT VIII

### THE SINGLETARYS DID NOT RATIFY THE $300,000 MORTGAGE, AS THEY ASSUMED THE INCREASES IN MONTHLY PAYMENTS WERE DUE TO THE ADJUSTABLE RATE PROVISION IN THE LOAN

"[T]he discovery rule 'tolls the limitations period until the plaintiff learns of his cause of action or with reasonable diligence could have done so" and "is an exception to the usual principle that the statute of limitations begins to run immediately upon accrual

regardless of whether or not the injured party has any idea what has happened to him.'"

Stephens v. Clash, 796 F.3d 281, 284–85 (3d Cir. 2015).


## POINT IX

**THE UNEXPLAINED BREAK IN THE CHAIN OF TITLE COUPLED WITH THE ABSENCE OF THE ORIGINAL NOTE, TOGETHER WITH THE ASSIGNMENT MORE THAN A YEAR AFTER THE ALLEGED TRANSACTION, COUPLED FURTHER WITH THE SINGLETARYS' SWORN STATEMENT, MANDATE A FINDING THAT THE TRANSACTION WAS NOTHING BUT A SHAM, AND THUS FRAUDULENT**


In order to show standing, "the plaintiff must have a sufficient stake in the outcome

of the litigation, a real adverseness with respect to the subject matter, and there must be a

substantial likelihood that the plaintiff will suffer harm in the event of an unfavorable

decision." New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409-410

(App. Div. 1997). In the foreclosure context, the plaintiff must demonstrate that he is

the holder of the mortgage and note at the time the complaint is filed. Failure to prove

this fact leads to dismissal of the case.

As a general proposition, a party seeking to foreclose a mortgage must own or

control the underlying debt. Gotlib v. Gotlib, 399 N.J. Super. 295, 312-313 (App. Div.

2008).  In the absence of a showing of such ownership or control, the plaintiff lacks

standing to proceed with the foreclosure action and the complaint must be dismissed.  Wells

Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592 (App. Div. 2011).  Under New Jersey law,

the enforcement of a promissory note that is secured by a mortgage is governed by N.J.S.A.

12A:3-301, which provides that it can only be enforced by:• instrument;

• a non-holder in possession of the instrument who has the rights of the holder; or

• a person not in possession of the instrument who is entitled to enforce the instrument

   pursuant to N. J.S.A.12A:3-309 or subsection d of N.J.S.A. 12A:3-418.

If a party is unable to satisfy any of these criteria, then that party cannot maintain a

foreclosure action. In Deutsche Bank Nat'l Trust Co. V. Mitchell, 422 N.J. Super. 214(App.

                        Div. 2011), Deutsche Bank did not have an assignment of, nor did it

                        demonstrate

that it possessed, the note at the time the complaint was filed. The Appellate Division

held that Deutsche Bank lacked authority to enforce the note under N.J.S.A. 12A:3-301

because: (1) it was not the holder of the note because the note was never endorsed to

it; (2) it was not a "non-holder in possession of the instrument who has the rights of the

holder" since it could not demonstrate possession at the time it filed the complaint; and

(3) it was not within the categories of persons not in possession of a note who may

enforce it, such as where the note has been lost, destroyed or stolen.

 The New Jersey Fair Foreclosure Act (FFA), N.J.S.A. 2A:50-53 et seq., provides strict

   guidelines for foreclosing lenders in order to resolve nonperforming loans. A lender's

   substantial compliance with the FFA is not enough; strict compliance is required. EMC

   Mortgage Corp. v. Chaudhri, 400 N.J. Super. 126, 137 (App. Div. 2008). Lenders are not

   permitted to deviate in any way from the requirements of the FFA because, as articulated

   by the legislative intent of the statute, homeowners should be given "every opportunity

to pay their home mortgages" and to "keep their homes." N.J.S.A. 2A:50-54.

Plaintiffs note the inexplicable break in the chain of title (EXHIBIT F to Plaintiffs' Declaration), and the out of the ordinary, after the fact, assignment of mortgage by New Century Mortgage Corporation during the height of New Century's ultimate Bankruptcy and the conviction of its officers for fraud, together with similar results and conduct by companies with which it regularly did business, as well as, again, the fact that no Defendant herein has been able to produce an original promissory note.

Since Defendants had no standing to foreclose, they have no standing herein to object to Plaintiffs' within petition.

## POINT X

### THE SINGLETARYS SHOULD BE ENTITLED TO CONDUCT DISCOVERY

As a general rule a debtor is entitled to discovery pursuant to Rule 2004, in the sound discretion of the Court, if necessary to establish the debtor's claims.  In re Serignese, No. 19-10724 (JLG), 2019 WL 2366424, at *2–3 (Bankr. S.D.N.Y. June 3, 2019).

Several of the defendants' have information relevant to — in fact, crucial to — Plaintiffs' position herein and, realistically, that information cannot be obtained, by Plaintiffs', outside of the scope of the discovery process in litigation. New Jersey law specifically recognizes this problem and, where appropriate, allows a party to be held in a lawsuit, solely for the purpose of compelling discovery from that party, even in the absence of any claim for relief against that party or entity (i.e.: to keep that party in litigation as a "Discovery Defendant").

In <u>Arcell v. Ashland Chemical Co., Inc.</u>, 152 NJ Super 471 (Law Div 1977), the court denied a motion to dismiss, by a defendant therein, finding that there was a basis to believe that plaintiff otherwise could not effectively obtain relevant information from any other source. id at 507. The court based its reasoning on the fact that "equity courts have long exercised their auxiliary jurisdiction to compel discovery alone without relief in aid of proceedings at law", id at 506. The court went on to hold that "the majority view is that modern rules and statutes relating to discovery do not abrogate equitable jurisdiction as to discovery, and equity may be resorted to where effective discovery cannot be obtained under the rules or statutes". id at 506.

This "Discovery Defendant" concept was expanded upon in <u>Beckwith v. Bethlehem Steel Corp.</u>, 182 NJ Super 376 (Law Div 1981). Basing its analysis on that in <u>Arcell</u>, above, the <u>Beckwith</u> court noted that New Jersey "has apparently adhered to the rule ... that `no person can properly be made a defendant, in the suit for discovery, or compelled as such to disclose facts within the person's knowledge, unless he has an interest in the subject matter of the controversy in aid of which the discovery is asked". <u>Beckwith</u>, above at 380. The court went on to hold that "mere witnesses cannot be joined as defendants and obliged to answer". id at 381

In distinguishing between a party who has an "interest" and a "mere witness", the court notes that <u>Arcell</u>, above, suggests that a proposed discovery defendant must have a "pecuniary interest" in the outcome. <u>Beckwith</u>,  at 381, citing <u>Arcell</u>, at 507.

The moving defendant in <u>Beckwith</u>, however, could not be shown to have had such a pecuniary interest. id at 381. The court, nonetheless, found that there might still be an

equitable basis for holding that defendant in as a party. In so ruling, the <u>Beckwith</u> court,
expanding on <u>Arcell</u>, created the following balancing test.

 In summary, whether an action for discovery should lie against a party who has no
pecuniary interest in the outcome of the litigation requires a balancing of certain
considerations. They are: (1) the "necessity a party may be under" in seeking the discovery,
<u>Walker v. Pennsylvania Railroad Co.</u>, <u>supra</u>, 134 N.J. Eq. at 550, or the importance of the
information sought in relation to the main case, <u>Lefebvre v. Somersworth Shoe Co.</u>, *supra*,
41 A.2d at 925; as against (2) the relative simplicity in which the information may be
supplied by defendant, Id., 42 A.2d at 924, and the availability of less burdensome means to
obtain the same information. <u>McCarter v. Farmer's Loan and Trust Co.</u>, <u>supra</u>, 105 NJ Eq. at
325; <u>Pottetti v. Clifford</u>, 146 Conn. 252, 150 A.2d 207 (Sup. Ct. Err. 1959. The court's
decision in such matters constitutes the exercise of discretionary equitable power. 1
Pomeroy, op. cit., secs. 202, 203.

 Plaintiffs argue that, given the essential nature of the information possessed by the
defendants herein, no defendant should be dismissed from the matter until completion of
discovery which we request be limited. We are focused on essentials. It appears that the
State court's decision of August 19, 2016 seems to have centered on an assignment
document and not a note. Counsel for Plaintiffs in July 2016 sought to have discovery
compelled. That relief was denied.

 Here, as above described, debtor is faced with a situation where it would appear that
the purported mortgage in 2006 did not even exist, but were sham transactions by New
Century Mortgage Corporation.

Particularly the assignment more than a year later, coupled with the fraudulent

history and bankruptcy of New Century Mortgage Corporation, and New Century Financial,

and cooperating entities. See Wikipedia article

https://en.wikipedia.org/wiki/New_Century_Financial [last visited on 10/10/2022],

discussed in the proposed First Amended Adversary Complaint submitted herewith,

describing a purported assignment from "EQUITY SOURCE HOME LOANS, LLC to

NEW CENTURY MORTGAGE CORPORATION, dated MARCH 31, 2006 and recorded

on OCTOBER 11, 2007 BOOK 01144 PAGE 00313 INSTRUMENT NUMBER

001026816 — an assignment recorded a full nineteen (19) months after the purported date

of the assignment. See Assignment Exhibit [] submitted herewith.

. https://www.npr.org/templates/story/story.php?storyId=13862929, [last visited

10/20/2022.] https://abcnews.go.com/Business/story?id=3442805&page=1, [last visited

10/20/2022.]

New Century Acquired by Carrington Capital Greenwich Connecticut

https://publicintegrity.org/inequality-poverty-opportunity/no-3-of-the-subprime-25-

new-century-financial-corp/; https://carringtoncap.com/ , [last visited 10/20/2022.]

**CONCLUSION**

Based upon the foregoing, the Singletary's request that the Defendants motions for dismissal of their Adversary complaint be denied, that the Court accept for filing the Singletary's First Amended Verified Complaint for filing.

Date:  October 18, 2022 /s/Vincent J. D'Elia
Attorney for Plaintiffs,
BILLY E. SINGLETARY and IDA MAE
SINGLETARY
309 Communipaw Avenue
Ground Floor
Jersey City, New Jersey 07304
Phone: (201) 656-6503
Fax: (201) 656-3276
Email: vjd@deliamccarthy.com