

Order Filed on February 21, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**BILLY SINGLETARY,**<br><br>　　　　　　　　　　Debtor. | Case No.:　　21-19637<br>Chapter:　　13<br>Judge:　　John K. Sherwood |
| **BILLY SINGLETARY AND<br>IDA SINGLETARY,**<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>**EQUITY SOURCE HOME LOANS, LLC,<br>et al.,**<br><br>　　　　　　　　Defendants. | Adv. Pro. No.:　　22-01091 |

**DECISION RE: DEFENDANTS' MOTION TO DISMISS**

**I.　INTRODUCTION**

　　This adversary proceeding was brought in this Chapter 13 case by plaintiffs, Billy and Ida Singletary (collectively the "Plaintiffs"). The case involves two mortgages on their home that they purportedly entered into in March and December of 2006 (the "March 2006 Mortgage" and "December 2006 Mortgage"). The Plaintiffs challenge the validity of these two mortgages, claiming that the March 2006 Mortgage was forged, and the December 2006 Mortgage was entered into under duress. Plaintiffs were given the opportunity to contest the validity of the December

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 2 of 20

Page 2
Debtor:     Billy Singletary
Adv. Pro.:  22-01091
Caption:    **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

2006 Mortgage in a foreclosure proceeding commenced by defendant Bank of New York Mellon in State Court, which resulted in a final judgment against them. Certain defendants have moved to dismiss Plaintiffs' Complaint under preclusion doctrines and the statute of limitations. The Court agrees that the claims against Bank of New York Mellon are precluded due to the foreclosure judgment. As to the other pending Motions to Dismiss, the Court finds that more information is needed before it can determine when the six-year statute of limitations began to run.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of reference from the United States District Court for the District of New Jersey. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(C)(K) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## III. FACTS AND PROCEDURAL HISTORY

Billy Singletary is a debtor in a Chapter 13 case filed on December 15, 2021. From 1978 to the present, Mr. Singletary and his wife Ida Singletary have resided at 169 Van Horne Street, Jersey City, New Jersey (the "Property"). Mr. Singletary filed a Chapter 13 plan which provides:

> Petitioner asserts that he and his wife, Ida Singletary, have no objection to paying any remaining legitimate balance on the original mortgage, against the Jersey City property located at 169 Van Horne Street (the Property), for the refinance that he and his wife took out in May, 2005. Petitioner objects only to having to pay down any monies arising out of or related to the two (2) fraudulent mortgages, from March 2006 and December 2006, as more fully set forth below.
>
> To that end, Petitioner represents his intention to make a good-faith payment, in the amount of $700.00 per month, to the Bank of New York Melon.

Page 3
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

[Case No. 21-19637, ECF No. 33, p. 2]. The Chapter 13 Plan was filed in April 2022 and it appears that since then, Mr. Singletary has been making payments of $130 per month to the Chapter 13 Trustee. It does not appear that the proposed $700 per month payments to Bank of New York Mellon are being made outside of the Chapter 13 Plan. Essentially, this Chapter 13 case has been in a long holding pattern subject to resolution of this adversary proceeding.

Plaintiffs acknowledge that they had a valid mortgage against the Property that was in place until March 2006, when the first of two allegedly fraudulent mortgage transactions occurred – an identity theft refinance which robbed the Plaintiffs of their home equity without their knowledge. The second transaction occurred six months later in December 2006 when another refinancing of their home mortgage took place. The Plaintiffs originally challenged this second refinancing as another fraud, including in the State Court foreclosure proceedings that resulted in a judgment against them. They have recently changed their argument and admitted that they participated in the December 2006 transaction but did so under duress.

The Plaintiffs filed this adversary proceeding on April 11, 2022, as *pro se* litigants to challenge the two 2006 mortgage transactions and save their home from foreclosure. The named defendants include the mortgage lenders, their assignees, brokers, servicers, title companies, and individuals who participated in the transactions. Various Motions to Dismiss were filed starting in June 2022.

The Plaintiffs retained Vincent D'Elia, Esq. as their counsel on August 15, 2022. Mr. D'Elia presented the Plaintiffs' case and opposed the various Motions to Dismiss. During 2023, Mr. D'Elia became very sick and requested the opportunity to finish the Motion to Dismiss phase of the case and draft a proposed Amended Complaint before retiring as Plaintiffs' attorney for

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 4 of 20

Page 4
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

health reasons. The Plaintiffs' proposed Amended Complaint was finally filed on October 27, 2023, and the defendants were given an opportunity to supplement their Motions to Dismiss. The defendants' supplements were filed by mid-November 2023. To their credit, the defendants and their counsel have afforded Mr. D'Elia time and professional courtesy considering his severe illness. They, and the Court, have been hoping for his return to good health. The Court notes that on December 18, 2023, Scott Goldstein, Esq. entered an appearance on behalf of the Plaintiffs in this adversary proceeding.

The proposed Amended Complaint states that the claims originally filed against defendants Prestige Title Agency, Inc., First American Title Co., and United General Title Insurance Company are being dismissed. Thus, the Motions to Dismiss by these defendants are moot. [ECF Nos. 14, 16].[1] Three motions are still pending: (1) J.P. Morgan Bank, N.A. ("JP Morgan Chase")[2] [ECF No. 17], (2) Bank of New York Mellon, CIT Mortgage Loan Trust ("BNY/CIT"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and MERSCORP Holdings, Inc. [ECF No. 20], and (3) Caliber Home Loans, Inc. ("Caliber"), CIT Group/Consumer Finance, Inc., and various individuals [ECF No. 27]. These motions are considered below.

<u>Pre-March 2006 Mortgages</u>

The Plaintiffs concede that the Property was subject to a valid mortgage prior to the first alleged fraud in March 2006. The record is not very clear on the Plaintiffs' pre-March 2006 mortgage history, but the following mortgages have been identified:

>   (1) Novastar Mortgage, Inc. for $128,000 dated February 26, 2001. This mortgage was apparently satisfied and discharged on July 15, 2005. [ECF No. 32-17, Ex. O]. This

---

[1] Unless otherwise noted, all ECF citations are from the docket in this adversary proceeding.
[2] Defendant JP Morgan Chase is successor to Chase Home Finance by merger. [ECF No. 43, ¶ 12]. Plaintiffs refer to Chase Home Finance as the defendant with respect to allegations prior to its merger with JP Morgan Chase.

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 5 of 20

Page 5
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

transaction is referenced in paragraph 38 of Plaintiffs' proposed Amended Complaint [ECF No. 43].

(2) MERS as nominee for BNC Mortgage, Inc. for $180,000 dated May 19, 2005. This mortgage was apparently satisfied and discharged on May 15, 2006. [ECF No. 32-17, Ex. O]. Mr. Singletary referred to a May 2005 refinance in his Chapter 13 plan. [Case No. 21-19637, ECF No. 33, p. 2].

(3) Chase Home Finance, LLC ("Chase Home Finance") for $182,656.05 (date unknown) Loan No. 20790812. [ECF No. 32-7, Ex. E]. It appears that Chase Home Finance acknowledged that this mortgage was paid off in a letter dated April 6, 2006. [ECF No. 32-5, Ex. C]. Given the amount of this mortgage, it is possible that Chase Home Finance was MERS' investor or a successor to MERS. In any event, Chase Home Finance was the mortgage holder that was satisfied by the first disputed mortgage transaction in March 2006.

## The March 2006 Mortgage

This mortgage in the amount of $238,000 closed on or about March 31, 2006. [ECF No. 32-7, Ex. E]. The Plaintiffs allege that this transaction was a scam, and that they did not participate in it. They speculate that they were victims of identity theft, and the perpetrators stole equity from their home.

The March 2006 Mortgage was originated by defendant Equity Source Home Loans, LLC, assigned to defendant New Century Mortgage Corporation, and possibly assigned again (or not) to defendant Chase Home Finance. The first assignment from Equity Source Home Loans, LLC to New Century Mortgage Corporation occurred on March 31, 2006, the same day that Equity Source Home Loans, LLC closed the deal. It appears that the intent was to close the March 2006 Mortgage transaction and assign the mortgage to New Century Mortgage Corporation immediately. [ECF No. 32-20, Ex. R, pp. 14-15]. The assignment from Equity Source Home Loans, LLC to New Century Mortgage Corporation was not recorded, however, until October 11, 2007, more than a year and a half after the assignment was executed. The Plaintiffs point out that

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 6 of 20

Page 6
Debtor: Billy Singletary
Adv. Pro.: 22-01091
Caption: **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

New Century Mortgage Corporation filed bankruptcy in April 2007 and was involved in "rampant fraud." [ECF No. 43, ¶ 8].

Further, it does not appear that there was an assignment from New Century Mortgage Corporation to the last holder of the March 2006 Mortgage, Chase Home Finance. [ECF No. 32-20, Ex. R]. The evidence supporting this "break in the chain of title" is an Affidavit of Missing or Incomplete Assignment prepared by JP Morgan Chase in August of 2018 ("August 2018 Affidavit"), approximately 12 years after Chase Home Finance was supposed to have been paid in full. It is not clear why the August 2018 Affidavit was prepared so long after the fact, and how and when Chase Home Finance was assigned the March 2006 Mortgage (if at all). The August 2018 Affidavit also has two Discharge of Mortgage documents attached, both related to the March 2006 Mortgage. The first is dated January 25, 2007, was recorded in February 2007, and is signed by Chase Home Finance. [ECF No. 32-20, Ex. R, p. 22]. This makes sense because the March 2006 Mortgage was allegedly paid off in December 2006. The second discharge was executed by JP Morgan Chase on August 9, 2018 – again, 12 years after Chase Home Finance was supposedly paid. The Court has reviewed all the pleadings filed by JP Morgan Chase in connection with its Motion to Dismiss. [ECF Nos. 17, 33, 47]. But nowhere does JP Morgan Chase address the facts and circumstances relating to the execution of the August 2018 Affidavit. Since this might be considered evidence that Chase Home Finance had some issues with respect to the enforcement of the March 2006 Mortgage when it was paid in full, it is odd that JP Morgan Chase has not responded.

Adding to the intrigue, the Plaintiffs' fraud allegations with respect to the March 2006 Mortgage are supported by the Pre-Funding Audit Worksheet which describes Billy Singletary as

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 7 of 20

Page 7
Debtor: Billy Singletary
Adv. Pro.: 22-01091
Caption: **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

"unmarried" and "white," when neither is accurate. [ECF No. 32-14, Ex. L, p. 3]. Mr. Singletary is the only obligor on the $238,000 note which is strange since the Property was owned by him and his wife, and Mr. and Mrs. Singletary were parties to the related mortgage. [ECF No. 32-20, Ex. R, p. 12, ECF No. 1-1, Ex. B]. Also, according to the closing statement, the Plaintiffs would have received $34,920.99 from the March 2006 Mortgage transaction and there is no evidence that these funds were distributed to them. [ECF No. 32-7, Ex. B].

Accepting the Plaintiffs' contentions concerning the March 2006 Mortgage, the main culprits would be those involved at the time of closing, including Equity Source Home Loans, LLC and New Century Mortgage Corporation. The mortgage documents were allegedly notarized by defendant Anthony L. Affatati, who is now deceased. The involvement of defendant Chase Home Finance, potentially the last holder of the March 2006 Mortgage by way of the missing or incomplete assignment, is now described as pressuring the Plaintiffs to enter into another loan transaction (the December 2006 Mortgage described below) in order to save their home from foreclosure. Plaintiffs say that the pressure was applied by defendant Chase Home Finance's agent, defendant Caliber. The Plaintiffs specifically say that defendants Jennifer Scott and David Nilsen were the Caliber employees who applied the pressure on behalf of Chase Home Finance. [ECF No. 43-1, ¶¶ 4, 8]. In sum, the Plaintiffs contend that when they were without an attorney, unsophisticated in mortgage transactions, and scared of losing their home, they were bullied by Chase Home Finance and its representatives to enter into another refinancing transaction they could not afford. Plaintiffs allege, "upon information and belief" that Chase Home Finance knew it had acquired a defective mortgage from New Century Mortgage Corporation, and instead of suffering the consequences, it decided to let the innocent and unsophisticated homeowners absorb

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 8 of 20

Page 8
Debtor: Billy Singletary
Adv. Pro.: 22-01091
Caption: **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

the loss by refinancing the defective loan. [ECF No. 43, ¶¶ 102-103, ECF No. 43-1, ¶¶ 4-8]. Although there are only allegations as to Chase Home Finance's knowledge and intent in late 2006, it appears that in August 2018, JP Morgan Chase (as successor to Chase Home Finance) knew that there was no record of and possibly no assignment from New Century Mortgage Corporation to Chase Home Finance and that there was some type of issue with the Discharge of Mortgage as described above.

Defendant JP Morgan Chase's Motion to Dismiss the Complaint says that it had nothing to do with the State Court foreclosure action or the December 2006 Mortgage. Chase Home Finance's only connection to this action is as an assignee of the March 2006 Mortgage which was refinanced and satisfied by the December 2006 Mortgage. [ECF No. 17-1, p. 10]. Defendant Caliber, the party that allegedly applied the pressure on the Plaintiffs on behalf of Chase Home Finance while threatening foreclosure, also denies any involvement in the March 2006 Mortgage transaction and thus would have no relationship with Chase Home Finance for the purposes of the March 2006 Mortgage. In support of its Motion to Dismiss, Caliber submitted a Certification of a Default Servicing Officer, Jamar Harris. [ECF No. 27-18]. This Certification provides that Caliber is the successor to certain of the mortgage servicing assets of "The CIT Group" who was the servicer of the December 2006 Mortgage loan "as of 2009." At some point thereafter (not mentioned), Caliber assumed the role as servicer. The Certification also says that defendant David Nilsen has been an employee of Caliber since January 2014 and Jennifer Scott began working at Caliber in November 2014 and stayed there for 7½ years. These are very significant assertions by Mr. Harris since the alleged undue influence and pressure was applied against the Plaintiffs by Caliber in December <u>2006</u>. It appears that Caliber is saying that neither it nor its two employees

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 9 of 20

Page 9
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

had anything to do with payment of the March 2006 Mortgage note or the origination of the December 2006 Mortgage transaction.

<u>The December 2006 Mortgage</u>

This mortgage in the amount of $300,000 is dated December 8, 2006. [ECF No. 1-1, Ex. B]. The original lender on this Mortgage was defendant Accredited Home Lenders, Inc. with defendant MERS acting as its nominee. The record includes an unsigned and barely legible closing statement for this transaction which suggests that after the payoff of the "Chase" loan, taxes, and settlement charges, more than $40,000 would have been distributed to the Plaintiffs at the closing. [ECF No. 1-3, Ex. M]. The Plaintiffs do not deny this transaction occurred, though they do not concede that they received any closing proceeds. Mr. Singletary certified that when he was first presented with the closing documents for the December 2006 Mortgage transaction, he refused to sign them. [ECF No. 43-1, ¶ 6]. The Plaintiffs claim that they were ultimately coerced to sign the mortgage documents under threat of foreclosure, without the assistance of counsel and without notice of their rights under "Truth in Lending." [ECF No. 43, ¶¶ 60-61].

Even though the Plaintiffs now concede that they entered into the December 2006 Mortgage transaction (under duress), there is a "red flag" in the loan application for the December 2006 Mortgage that is worth discussing. [ECF No. 32-15, Ex. M]. At the bottom of the application, the Plaintiffs are again described as "white" which is not true. Another notable fact is that the original lender on this mortgage, Accredited Home Lenders, Inc., filed bankruptcy proceedings in Delaware in May 2009. [Delaware Bankr. Case No. 09-11516, ECF No. 43, ¶ 93].

Defendant BNY/CIT is the most recent holder of the December 2006 Mortgage. BNY/CIT obtained the mortgage by way of assignment from MERS as nominee for Accredited Home

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 10 of 20

Page 10
Debtor:     Billy Singletary
Adv. Pro.:  22-01091
Caption:    **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

Lenders, Inc. on October 20, 2015 and commenced foreclosure proceedings against the Plaintiffs in State Court in December 2015. On November 17, 2015, just prior to the foreclosure complaint, Mr. Singletary went to the Jersey City Police and reported that he was the victim of identity theft. The Police Report refers to both the March and December 2006 Mortgages. [ECF No. 1-2, Ex. E].

The Plaintiffs retained counsel (Montell Figgins, Esq.) in the State Court foreclosure case and responded to the complaint. Upon the motion of BNY/CIT, which Mr. and Mrs. Singletary contested, the State Court granted summary judgment striking the Singletarys' answer, affirmative defenses, and counterclaims. [ECF No. 32-13, Ex. K, p. 2]. In response to the summary judgment motion, the Plaintiffs argued that BNY/CIT did not have possession of the note, the note may have been forged, and they needed discovery before summary judgment should be considered. [ECF No. 20-8, ECF No. 20-9]. BNY/CIT argued, among other things, that the Plaintiffs had made periodic payments on the December 2006 Mortgage for 9 years before their ultimate default on June 1, 2015 – a significant detail. [ECF No. 27-10, Ex. H, p. 6]. The State Court rejected the Singletarys' arguments, and a foreclosure judgment was entered against them on April 4, 2018. [ECF No. 20-12, Ex. J]. It does not appear that the Plaintiffs took an appeal from the judgment.

The Motion to Dismiss by BNY/CIT is based primarily on issue preclusion arguments (res judicata, collateral estoppel and the Rooker Feldman Doctrine) and the passing of the statute of limitations. [ECF No. 20-1]. The Singletarys' allegations concerning the December 2006 Mortgage in the State Court foreclosure action were different than those now raised in the Plaintiffs' proposed Amended Complaint – that they signed the mortgage documents but did so under duress. [ECF No. 43, ¶¶ 59-62]. But the proposed Amended Complaint does not attribute any of the duress or coercion to BNY/CIT or any of its agents or predecessors.

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 11 of 20

Page 11
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

Defendant Caliber was the servicer of the December 2006 Mortgage until 2019 and, as set forth above, denies any involvement in the March 2006 Mortgage transaction. [ECF No. 27-18, ¶ 7, ECF No. 27-1, p. 8, n. 2]. Caliber executed a Modification Agreement with the Plaintiffs dated November 19, 2013. At this point, Accredited Home Lenders, Inc. (with MERS as nominee) must still have been the investor. This Modification Agreement does not refer to a prior Modification Agreement dated May 10, 2011, between the Plaintiffs and BNY/CIT which also related to the December 2006 Mortgage. Since BNY/CIT was not assigned the December 2006 Mortgage until October 2015, it is mysterious that they were a party to a Modification Agreement four years earlier. [ECF No. 20-10, Ex. H, pp. 34-42].

At the request of Plaintiffs, the State Court stayed BNY/CIT's foreclosure judgment from September 27, 2018 until December 20, 2018, referencing an "investigation presently pending." [ECF No. 27-13, Ex. K, p. 2, ECF No. 32-4]. JP Morgan Chase and Caliber were among the parties conducting investigations. By letter dated July 2, 2018, Caliber opened an investigation [ECF No. 32-6] and, in a letter dated September 11, 2018, Chase Home Finance indicated that it was prepared to investigate Mr. Singletary's allegations of identity theft. [ECF No. 32-3, Ex. A, p. 9]. However, it does not appear that any of the results of the investigations pending in 2018 were shared with the Plaintiffs or the State Court. It is interesting though that these investigations were pending when JP Morgan Chase prepared the August 2018 Affidavit described above.

Bankruptcy Filings

On December 20, 2018, as the stay issued by the State Court was set to expire, Billy Singletary filed a Chapter 13 bankruptcy case [Case No. 18-34886], which further stayed the

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 12 of 20

Page 12
Debtor: Billy Singletary
Adv. Pro.: 22-01091
Caption: **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

foreclosure proceedings in State Court.[3] On May 29, 2019, Mr. Singletary's bankruptcy case was dismissed pursuant to a motion filed by the Chapter 13 Standing Trustee based on, *inter alia,* Mr. Singletary's failure to make payments to the Trustee. [Case No. 18-34886, ECF Nos. 25, 38].

Shortly thereafter, on October 24, 2019, Ida Singletary filed a Chapter 13 bankruptcy case. [Case No. 19-30097].[4] Her Chapter 13 case was dismissed on August 12, 2020, for failure to file a modified Chapter 13 plan. [Case No. 19-30097, ECF No. 34].

On December 20, 2020, an Alias Writ for a foreclosure sale was issued. [ECF No. 43, p. 10]. Approximately one year later, on December 15, 2021, Billy Singletary filed his current bankruptcy case. [Case No. 21-19637].

## IV. <u>STANDARD OF REVIEW</u>

Under Fed. R. Civ. P. 8(a)(2) a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint does not need "detailed factual allegations," but the plaintiff is obligated to show grounds for relief that are more than labels,

---

[3] Mr. Singletary was represented in his bankruptcy case by Mr. D'Elia. On Schedule D, Mr. Singletary listed The Bank of New York Mellon as a secured creditor with a mortgage on the Property. [Case No. 18-34886, ECF No. 13, p. 13]. Mr. Singletary did not check the box for "disputed" with regard to the bank's claim. Mr. Singletary's Chapter 13 Plan listed the arrearage owed to The Bank of New York Mellon as $113,939.27 and provided for that amount to be paid through the plan. [Case No. 18-34886, ECF No. 31, p. 4]. BNY/CIT objected to confirmation of the plan on the grounds that its Proof of Claim listed pre-petition arrears in the amount of $132,492.95 and Mr. Singletary's Plan did not provide for payment of that amount. [Case No. 18-34886, ECF No. 35, pp. 2-3].

[4] Mrs. Singletary was initially represented in her bankruptcy case by Mr. D'Elia. On February 11, 2020, Nicholas Fitzgerald substituted in as her counsel [Case No. 19-30097, ECF Nos. 8, 9]. On Schedule D. Mrs. Singletary listed Bank of New York Mellon as a secured creditor with a claim in the amount of $467,143.00 [Case No. 19-30097, ECF No. 10, p. 30]. Mrs. Singletary similarly did not check the box for "disputed" with regard to the bank's claim. Mrs. Singletary's Chapter 13 Plan sought to obtain a loan modification to address the arrears owed to Bank of New York Mellon [Case No. 19-30097, ECF No. 11]. BNY/CIT objected to confirmation of Mrs. Singletary's Chapter 13 Plan on the grounds that a loan modification had not been offered or approved and her Plan failed to otherwise provide for payments of its pre-petition arrears. [Case No. 19-30097, ECF No. 23]. Confirmation of Mrs. Singletary's Plan was denied on June 26, 2020, and she was required to file a modified plan by July 23, 2020, which she failed to do. [Case No. 19-30097, ECF No. 31].

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 13 of 20

Page 13
Debtor:     Billy Singletary
Adv. Pro.:  22-01091
Caption:    **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

conclusions, or elements of a claim. *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, to survive a Motion to Dismiss under 12(b)(6), a complaint requires "sufficient factual matter" that, when accepted as true, states a claim plausible on its face. Factual plausibility exists when factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570).

The court's task is context-specific, and if the court cannot infer from well-pleaded facts more than the possibility of misconduct, then the complaint has only alleged, but not shown, entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Additionally, Fed. R. Civ. P. 9(b) imposes a heightened pleading standard upon fraud claims, requiring a party to "state with particularly the circumstances constituting fraud." *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (holding that while dismissal under Rule 12(b)(6) alone is not proper, dismissal under Rule 9(b) is, due to the fraud-claim particularity requirements).

## V. LEGAL ANALYSIS

### A. Issue Preclusion

The claims against BNY/CIT are precluded by New Jersey's Entire Controversy Doctrine which applies in federal courts where there was a previous state action involving the same transaction. *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015). "The entire controversy doctrine requires that a person assert in one action all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party." *In re Mullarkey,* 536 F.3d 215, 229 (3d Cir. 2011) (citation omitted). The Entire Controversy Doctrine

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 14 of 20

Page 14
Debtor: Billy Singletary
Adv. Pro.: 22-01091
Caption: **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

is narrower in foreclosure actions where only "germane" claims will be precluded if they are not brought by a party to the case. N.J. Ct. R. 4:64-5. And claims are germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action. *Leisure Tech-N.E., Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 358 (App. Div. 1975); *Delacruz v. Alfieri*, 447 N.J. Super. 1, 12-16 (Law Div. 2015).

The Plaintiffs have had their day in Court with BNY/CIT in the State Court foreclosure proceedings. In those proceedings, the Plaintiffs retained counsel and defended foreclosure based on forgery and an allegation that BNY/CIT did not possess the original note. [ECF No. 20-8, Ex. F]. They did not argue, as they do now, that they signed the mortgage under duress. Such a claim would have been germane under New Jersey law. Moreover, the alleged coercion was not committed by BNY/CIT – Mr. Singletary says that the pressure was applied by Chase Home Finance and Caliber. Finally, in their previous bankruptcy cases, the Plaintiffs did not challenge the BNY/CIT foreclosure judgment, rather Mr. Singletary proposed to cure the arrears due under the mortgage and Mrs. Singletary proposed loss mitigation with BNY/CIT. Only in this third bankruptcy did Mr. Singletary challenge the validity of the December 2006 Mortgage. Under these circumstances, the Plaintiffs cannot have a second chance in this adversary proceeding to present claims that they either did assert or should have asserted in the State Court.[5]

The Entire Controversy Doctrine has also been raised by defendants JP Morgan Chase and Caliber. The Court agrees that to the extent that the claims against Caliber relate to its role as servicer of the December 2006 Mortgage, the Entire Controversy Doctrine should apply because

---

[5] The abnormal event in the history of the December 2006 Mortgage transaction was the May 2011 Loan Modification Agreement which was signed by BNY/CIT four years before BNY/CIT became the owner of the mortgage by way of assignment. To the extent Plaintiffs want BNY/CIT to explain this document, they can do so through informal or formal discovery under Bankruptcy Rule 2004.

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document      Page 15 of 20

Page 15
Debtor:        Billy Singletary
Adv. Pro.:     22-01091
Caption:       **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

Caliber was in privity with BNY/CIT. *Delacruz v. Alfieri,* 447 N.J. Super. at 23-24. But the proposed Amended Complaint now describes Caliber and its employees as representatives of Chase Home Finance who pressured Plaintiffs to pay off the flawed March 2006 Mortgage (held by Chase Home Finance) by entering into the December 2006 Mortgage. To the extent that this allegation gives rise to legitimate claims, the Entire Controversy Doctrine might apply. If Chase Home Finance bullied Plaintiffs to enter into the December 2006 Mortgage transaction, the alleged pressure by Chase Home Finance might be grounds for liability (or a defense) based on "the same transactional facts" that were before the State Court in the foreclosure action. N.J. Ct. R. 4:5-1(b). In hindsight, Plaintiffs should have disclosed Chase Home Finance and Caliber as parties subject to joinder in the foreclosure litigation if their contention was that they engaged in unlawful coercion with respect to the origination of the December 2006 Mortgage. Obviously, Chase Home Finance and Caliber were not mentioned in the State Court foreclosure action because the Plaintiffs have only recently accused them of this type of wrongdoing. But Plaintiffs contend that they were not aware of Chase Home Finance's assignment problems until they saw JP Morgan Chase's August 2018 Affidavit, approximately four months <u>after</u> the foreclosure judgment.

Under these unique circumstances, it is hard to give JP Morgan Chase the benefit of the Entire Controversy Doctrine. It was not a party to the State Court foreclosure proceedings and, according to Plaintiffs, a key piece of evidence against Chase Home Finance was not brought to light until the August 2018 Affidavit was disclosed. The Entire Controversy Doctrine's application does not bar claims that are unknown, unarisen, or unaccrued at the time of the original action. *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 323 (1995). At this point, the Court does not know why the August 2018 Affidavit was prepared. It is strange that the August 2018

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 16 of 20

Page 16
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

Affidavit was executed shortly after the foreclosure judgment was entered and approximately 12 years after Chase Home Finance was supposed to have been paid in full. For these reasons, JP Morgan Chase's Motion to Dismiss will not be granted under the Entire Controversy Doctrine or any other issue preclusion theories. This ruling would also apply to defendant Caliber and its employees, but only to the extent of the alleged coercion that occurred in or about December 2006.

B. **Statute of Limitations**

JP Morgan Chase and Caliber also raise compelling arguments that the claims against them are barred by the statute of limitations. Count One of the proposed Amended Complaint accuses JP Morgan Chase and Caliber of predatory lending. In Count Two they are charged with common law fraud. Count Three asks for relief based on equitable fraud. Count Four seeks relief under the New Jersey Consumer Fraud Act. And Count Five seeks a declaratory judgment that the relief sought in the prior Counts is not barred by the applicable statute of limitations (which Plaintiffs say is six years) or the Rooker-Feldman Doctrine.

Plaintiffs' fraud-related claims, Counts One through Five, could be barred by the six-year statute of limitations. *See* N.J.S.A. 2A:14-1, *et seq*; *see also Wells Fargo Bank, NA v. Taylor*, 2020 WL 1291450 (N.J. Super. App. Div. Mar. 18, 2020) (barring, pursuant to N.J.S.A. 2A:14-1, mortgagor's fraud-based claims against bank after foreclosure action under six-year statute of limitations, when mortgagor executed the note in 2010 and raised untimely fraud allegations in 2017). Plaintiffs acknowledge that "the applicable statutes of limitation with respect to each of the counts herein is six (6) years" from "when the fraud was discovered, or through reasonable diligence should have been discovered." [ECF No. 43, ¶ 116] (quoting *Catena v. Raytheon Co.*, 447 N.J. Super. 43, 52-53 (App. Div. 2016)).

| | |
|---|---|
| Page 17 | |
| Debtor: | Billy Singletary |
| Adv. Pro.: | 22-01091 |
| Caption: | **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS** |

The undue pressure allegedly asserted by Chase Home Finance and Caliber occurred in December 2006. Mr. Singletary acknowledged that he initially resisted the December 2006 Mortgage transaction but decided at that time to close because he was afraid that Chase Home Finance would foreclose. If Mr. Singletary believed that something was amiss with his home mortgage situation in December 2006, it could be said that with reasonable diligence, he should have discovered that the March 2006 Mortgage was a sham and Chase Home Finance (with Caliber's assistance) was seeking payment on a fraudulent mortgage. Indeed, there is only a six-month gap between the two mortgages and if Mr. Singletary had investigated the March 2006 Mortgage transaction when he was approached in December, the alleged perpetrators of the March 2006 fraud might have been held accountable. Obviously, if the statute of limitations is deemed to run from December 2006, it expired long ago.

Then, on November 17, 2015, the Plaintiffs reported to the Jersey City Police Department that they were the victims of identity theft. And the police report specifically refers to a $238,000 Chase Home Finance mortgage and a $300,000 mortgage (which must be the December 2006 Mortgage). [ECF 1-2, Ex. E]. If this is when the Plaintiffs actually knew they had been defrauded, the statute of limitations would run on November 17, 2021, and this case would be time barred.

But the Plaintiffs argue that the statute of limitations should not begin to run until August 2018, when JP Morgan Chase prepared the Affidavit of Missing or Incomplete Assignment – which suggests that when it was paid in full on the March 2006 Mortgage, Chase Home Finance was not in possession of the assignment of the mortgage or the assignment was never completed. Reading the facts and circumstances in a light most favorable to the Plaintiffs, the suggestion is that while they had a general idea that there were some irregularities with their home mortgage

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
                    Document      Page 18 of 20

Page 18
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

history, the exact nature of the fraud allegedly committed by Chase Home Finance and Caliber did not come to light until they saw the August 2018 Affidavit. Now, they have more information at their disposal to allege that Chase Home Finance, with Caliber's assistance, did not have the ability to foreclose the Property, and that Chase Home Finance knew it, concealed it, and forced the Plaintiffs to refinance in an effort get paid on a fraudulent mortgage debt.

The issue is when the Plaintiffs discovered, or by the exercise of reasonable diligence and intelligence should have discovered, that the March 2006 Mortgage was fraudulently placed against their Property and Chase Home Finance had no basis to enforce it. *Catena v. Raytheon Co.*, 447 N.J. Super. 43 (App. Div. 2016); *see also Lopez v. Swyer*, 62 N.J. 267 (1973). New Jersey's discovery rule is a rule of equity which mitigates the unfair result of barring claims of unknowing parties. The discovery rule is particularly justified in fraud cases, where the wrongdoer's very objective is the victim's lack of awareness of the fraud. Accrual of the fraud claim begins either when the injured party has "legal certainty" of the claim, or once the victim becomes aware of the full extent of the damage. *Catena*, 447 N.J. Super. at 53-54 (citations omitted).

Whether Plaintiffs are entitled to the benefit of the discovery rule requires the Court to consider all facts and circumstances, as this determination is "highly fact-sensitive," varying from case to case. *Catena*, 447 N.J. Super. at 54. Courts do not require plaintiffs to have a "level of circumspection that is unreasonable under the circumstances." *Id.* at 56. In addition, discovery of fraud does not occur until the victim becomes aware that the wrongdoer *knew* of his statement's falsity and, therefore, the Court will not impute upon the victim knowledge of facts accessible by public record. *Catena* held that a victim's knowledge of the fraud is required to trigger the statute of limitations, whereas mere suspicion of a fraudulent act is insufficient. *Id.* at 54-56. A non-

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 19 of 20

Page 19
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

exhaustive list of factors courts should consider include the nature of the injury, availability of witnesses and evidence, time elapsed since the wrongdoing, whether the delay was deliberate or intentional, and whether the delay was unusually prejudicial. *Lopez v. Swyer*, 62 N.J. at 276.

To address the question of whether Plaintiffs' statute of limitations is tolled by the discovery rule, this Court will hold a "*Lopez* hearing" to determine when Plaintiffs learned, or reasonably should have learned, that fraud occurred. Under New Jersey law, whether a claim is barred by the statute of limitations is a question of law, and application of the discovery rule is for the court to decide through a preliminary hearing. *Lopez*, 62 N.J. at 275. The *Lopez* court held that a preliminary hearing outside of the jury's presence was necessary when assessing whether the plaintiff could benefit from the discovery rule. The Plaintiffs have the burden of proving whether they are equitably entitled to the discovery rule's benefit. *Id.*

Here, the Plaintiffs may have a hard time meeting their burden given Mr. Singletary's suspicions in December 2006 and in the November 2015 police report discussed above. But the Court would like to see the results of the investigations of JP Morgan Chase and Caliber and an explanation of why JP Morgan Chase prepared the August 2018 Affidavit. This information could be relevant to the Plaintiffs' allegation that Chase Home Finance knew it had acquired a bad mortgage from New Century Mortgage Corporation and decided to enforce it anyway. As to Caliber and its employees, they contend they were not even involved with the Plaintiffs' mortgage situation in December 2006. If this is true, then the claims against both JP Morgan Chase and Caliber may be dismissed. Thus, the Court would also like to address this limited issue at the *Lopez* hearing. The parties are directed to meet and confer to schedule a status conference with the Court to address the time, place, and manner of the *Lopez* hearing.

Case 22-01091-JKS    Doc 54    Filed 02/21/24    Entered 02/21/24 12:43:36    Desc Main
Document    Page 20 of 20

Page 20
Debtor:      Billy Singletary
Adv. Pro.:   22-01091
Caption:     **DECISION RE: DEFEDANTS' MOTIONS TO DISMISS**

## VI. CONCLUSION

For the reasons set forth above, defendant BNY/CIT's Motion to Dismiss is granted pursuant to New Jersey's Entire Controversy Doctrine. However, because the discovery rule may have tolled Plaintiffs' statute of limitations, the Court reserves decision on the Motions to Dismiss by Caliber and JP Morgan Chase pending the outcome of the hearing (to be scheduled) on whether Plaintiffs are entitled to the benefits of the discovery rule and whether Caliber played any role in the December 2006 Mortgage transaction.

**DATED: February 21, 2024**

_____
Honorable John K. Sherwood
United States Bankruptcy Court